IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ADAM RECLA,

                Plaintiff,

  v.

JEREMIAH CURTIS, DERRICK JUNE,
JOSHUA MARCIULIONIS, MITCHELL KUNHART,
and SANDRA ENDER,[1]

                Defendants.

OPINION and ORDER

24-cv-101-jdp

---

Plaintiff Adam Recla, proceeding without counsel, is currently incarcerated at John C. Burke Correctional Center, in Waupun, Wisconsin. Recla alleges that when he was at Jackson Correctional Institution, prison officials intentionally made him walk on his paralyzed and disfigured leg and didn't give him back his ankle-foot orthosis even after he fell and was injured. I granted him leave to proceed on claims under the Eighth Amendment to the United States Constitution.

Defendants move for summary judgment. Dkt. 28. Recla did not follow this court's summary judgment procedures by filing a brief or responses to defendants' proposed findings of fact, even after I denied his motion to "acknowledge" various documents that he had submitted as evidence and reminded him of his summary judgment opposition deadline. *See* Dkt. 60. That means that I will generally consider defendants' proposed findings to be undisputed. *See* attachments to preliminary pretrial conference order, Dkt. 18, at 8 ("If a party fails to respond to a fact proposed by the opposing party, the court will accept the opposing

---

[1] I have amended the caption to reflect the correct spelling of defendants Marciulionis's and Kunhart's names as stated in their filings.

party's proposed fact as undisputed."). Nonetheless, because Recla is unrepresented, I will consider the declaration that he has filed. *See* Dkt. 50. Based on these materials, I will grant summary judgment to defendants and dismiss the case. The record shows that Recla was deprived of his orthosis based on a miscommunication between officers and medical staff about Recla's medical restrictions. There is no evidence that defendants consciously disregarded Recla's condition.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Adam Recla is an inmate in the custody of the Wisconsin Department of Corrections. The relevant events took place while Recla was incarcerated at Jackson Correctional Institution (JCI). Defendants all worked at JCI: Derrick June and Joshua Marciulionis were correctional officers, Jeremiah Curtis was a captain, Mitchell Kunhart was a sergeant, and Sandra Ender was a "nurse clinician 2."

On March 28, 2023, Recla was placed on temporary lockup status following a urinalysis suggesting that Recla had misused Suboxone.

Temporary lockup cells are in the restricted housing unit. Inmates entering this unit must undergo a strip search. Recla was taken to a temporary holding cell to be strip-searched. Officers June performed the strip search, and Marciulionis assisted in Recla's intake process.

As part of the intake process for the restricted housing unit, the Health Services Unit (HSU) is notified of all placements. At that time, a health care staff member reviews the inmate's health records, determines if any accommodations are necessary, and ensures access to necessary medical supplies and equipment. Medical devices, especially those which contain

2

metal or other potentially dangerous materials, are not allowed in restricted housing as they can be altered and made into dangerous objects. The only exceptions are those deemed by HSU staff to be medically necessary. Defendant Kunhart prepared paperwork relating to Recla's transfer, but he did not participate in any conversations with the Health Services Unit about Recla's medical devices.

At the time of Recla's intake search, he was wearing an ankle-foot orthosis made of hard plastic or carbon fiber to assist him with walking on a leg that Recla calls paralyzed and disfigured. During the search, defendant June collected it pending the HSU's determination of necessity. Defendant Marciulionis took it next door to Captain Curtis's office. Curtis placed a phone call to the HSU and spoke with defendant Ender. Curtis told Ender that Recla had a "brace" on his left leg and asked whether it was medically necessary for him to have it in restricted housing.

Ender reviewed Recla's "Special Handling Summary" while on the phone with Captain Curtis. That document included restrictions for Recla's ankle-foot orthosis and for a "left knee brace with adjustable joints." Dkt. 57-1, at 1. Ender believed that Curtis was asking about the knee brace. Ender told Curtis that Recla didn't need the brace, at least for the time being, because inmates' movement is severely limited in the restricted housing unit, and because cells in the unit have fixtures for inmates to bear their weight on to move around the cell. Ender told Curtis that they would talk to his physical therapist about whether the brace was truly necessary. Ender states that had she known that Curtis was calling about the ankle-foot orthosis, she probably would have inquired further about whether that device was medically necessary.

3

Defendants say that Recla told them that he couldn't walk very far without his brace. Recla states that he told them that he couldn't walk at all. Recla's Special Handling Summary indicated that he required wheelchair transportation when being transferred, so one was brought to just outside the holding cell. Recla says that he grabbed each side of the holding cell and walked forward; defendants say that they were supporting him on either side of his body. It's undisputed that Recla tripped on the lip of the cell door, rolled his ankle, and began to fall. Recla heard a "cracking/popping noise" in his foot and felt pain. Defendants June and Marciulionis caught Recla as he fell and placed him in the wheelchair to transport him to his new cell. They placed him in his new cell without giving him his ankle-foot orthosis.

Recla pushed the emergency-call button in his cell and spoke twice with defendant Kunhart about his injury, who told Recla to wait while they completed a shift change. About an hour after he was placed in the restricted housing cell, Recla was seen by a nurse, who stated that he had bruising on the top and side of his ankle. She splinted the ankle to await an X-ray. The next day, Recla received an X-ray, which showed no fracture or dislocation. Around the same time, defendant Curtis spoke with Recla's physical therapist, who provided Recla with a different ankle-foot orthosis made of softer material that was more appropriate given the safety concerns for inmates in a restricted housing placement.

## ANALYSIS

I granted Recla leave to proceed on the following claims under the Eighth Amendment: (1) defendants Curtis, June, and Marciulionis knowingly made him walk on his paralyzed and disfigured leg and then didn't give him back his ankle-foot orthosis even after he fell; (2) defendant Ender told the officers that Recla didn't need the orthosis; and defendant

4

Kunhart didn't consult electronic prison records to determine whether Recla needed his ankle-foot orthosis.

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). Defendants do not seek summary judgment on this portion of the legal standard. And I will assume that Recla's fall was caused in part by the deprivation of his ankle-foot orthosis.

A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

The undisputed facts show that none of the defendants consciously disregarded Recla's condition. Rather, the only reasonable inference is that defendants deprived Recla of his ankle-foot orthosis based on a miscommunication in the phone call between defendants Curtis and Ender, in which Curtis referred to a "brace," leading Ender to assume that he meant Recla's knee brace rather than his orthosis. Defendants Curtis, June, and Marciulionis took the orthosis from Recla only after getting approval from Ender. In screening Recla's complaint, I warned him that he would "need to provide evidence showing that defendants actually knew that [he]

5

faced a substantial risk of harm without his [orthosis], and that they didn't fairly rely on the assessment of medical staff that he would be safe without [it]." Dkt. 10, at 3–4; see also *McGee v. Parsano*, 55 F.4th 563, 573 (7th Cir. 2022) (correctional officer may defer to nurse's medical judgment). The evidence here shows that these non-medical professional defendants reasonably relied on Ender's medical judgment. *See Giles v. Godinez*, 914 F.3d 1040, 1049–50 (7th Cir. 2019). Then they caught Recla as he fell. They left him in his cell without his orthosis, but they were still under Ender's directive to withhold it, and the room had the fixtures to help Recla ambulate. Nothing in the parties' submissions suggests that the officers consciously disregarded Recla's condition. I will grant defendants' motion for summary judgment regarding these officers.

As for defendant Ender, it is undisputed that she mistakenly thought that defendant Curtis was calling about Recla's knee brace and that she would have investigated further had she known that he was talking about Recla's orthosis. Ender's failure to understand that Recla had multiple devices and that Curtis was calling about the orthosis might be negligent, but negligence isn't enough to support an Eighth Amendment medical care claim. Ender is also entitled to summary judgment.

That leaves defendant Kunhart. Recla's allegations against Kunhart were relatively sparse; I granted him leave to proceed on a claim against Kunhart for failing to consult electronic prison records to determine whether Recla needed his orthosis. But the parties' summary judgment submissions don't include anything suggesting that Kunhart had any involvement in the initial deprivation of the orthosis that led to Recla's fall. In his declaration, Recla suggests that Kunhart didn't get him immediate medical treatment after his fall. But I didn't grant Recla leave to proceed on such a claim, and even if I had, Recla was treated within

6

an hour of the incident and there is no evidence suggesting that he was harmed by the delay. If what Recla means is that Kunhart didn't check to see whether Recla should have been given his orthosis after the incident, there is no evidence that Recla was further harmed by the deprivation of his orthosis. And in any event, Kunhart's failure to look up Recla's restrictions afterward would have at most been negligent, which is not enough to support an Eighth Amendment claim. I will grant summary judgment to defendants on Recla's claim against Kunhart.[2]

ORDER

IT IS ORDERED that:

1. The clerk of court is directed to amend the caption as reflected above.
2. Defendants' motion for summary judgment, Dkt. 28, is GRANTED.
3. The clerk of court is directed to enter judgment accordingly and close the case.

Entered August 14, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

---

[2] Defendants also contend that they are entitled to qualified immunity on Recla's claims. Because I am dismissing those claims on the merits, I need not consider defendants' qualified immunity arguments.